Thank you, Your Honor. May it please the Court, good morning, Your Honors. My name is Andrew Wheaton. I represent the defendant, City of St. Louis, in this case. The plaintiffs in this case failed to cite any decision certifying a damages class under Rule 23b3 so broad as this, and that is telling. District Court's decision is unprecedented. It's contrary to the basic tenets of Rule 23. It runs afoul of the Supreme Court's controlling decisions in Walmart v. Duke and Amtem Products v. Windsor, among others. But beyond that, the certification here is unworkable. It's impracticable. And the individual claims of each of these individual plaintiffs could never be practically resolved in a single action in this case. I welcome any questions the Court has at this time, given that the matters are thoroughly briefed. And if the Court has none now, I'll proceed with my argument. Well, are you challenging the standing of the individuals who've been named in the class? Yes, Your Honor, with respect to the fact that at the time that these plaintiffs moved for class certification, two of them were John Doe plaintiffs. Now, the District Court is, this Court's probably aware later, granted leave to amend, allowed the substitution of I do think that there's a standing issue that two of the plaintiffs were not actually named plaintiffs at the time that the complaint was initiated or amended. They weren't even named plaintiffs at the time that they moved for certification. Only two of the plaintiffs? Do you challenge or? See, to the best of my recollection, Judge, and I'd have to check the record with respect to any others, and I'd be happy to file a 28-J citation if there's an issue on that front. To the best of my recollection, too, we're I do have a question. Is it your contention that this matter was inadequately evaluated by the District Court, or do you contend that the conditions that are mentioned in the District Court order are simply in and of themselves unworkable for a class certification? Both, Your Honor. With respect to the conditions themselves, as we point out in our brief, the District Court failed to even identify as an initial matter what conditions are at issue in this case, which is, it's a huge problem from the city's perspective. Isn't that relatively clear? You've got environmental concerns for the heat conditions, you've got environmental concerns for rodents and other pests. Aren't those fairly clear? Those are part of the broad allegations that the plaintiffs made in this case, but their motion for class certification also referenced inadequate lighting, issues with ADA accessibility, possible lead exposure, an inadequate or nonexistent law library, a lack of feminine hygiene products, any number of various complaints that are as yet unidentified. And the scope of the District Court's order is so broad that if we were to try this case, it seems to me that any complaint — Did the District Court's order include all of the things you just listed? It doesn't mention them specifically, no, Judge. You're correct that the District Court's order does mention plumbing issues, pest issues, temperature issues, of course, and alleged mold. But even with respect to those main categories of conditions, as we point out, half of just the named plaintiffs in this case, the class representatives, have zero complaints about mold, and half have no complaints about plumbing. So that goes straight to the practical issues that there would be with attempting to try this case. I mean, I've imagined we're at a class action trial. A plaintiff gets on the stand and testifies, I was exposed to mold at this facility. Objection. Relevance, Your Honor. It's completely irrelevant to half of the class representative's claims in this case. They have no allegation of mold at all. They admit they were never exposed to it. So it's incredibly prejudicial to the City if the District Court were to allow allegations of, for example, mold exposure to be tried in a single class where half of the named reps, notwithstanding the thousands of others, may have no complaint of mold at all. The same goes with respect to plumbing. It's a completely unworkable allegation. Well, are there some conditions that all of the named plaintiffs were exposed to? Not with any degree of uniformity, Your Honor, and especially none that would satisfy or enable the court at a class action trial to apply the well-established totality of the circumstances test uniformly to all of the class members. So again, back to the practical issues with trying this case, if I were to try to fashion or the court were to try to fashion a jury instruction that could be applicable to all of the plaintiffs, it is impossible to do so. The model jury instruction for a condition of confinement claims calls for the insertion of, insert conditions complained of. They're different for every class plaintiff. How could we fashion a jury instruction that would work for everyone without prejudicing the City and allowing the admissibility of irrelevant evidence for some plaintiffs to be admitted at a class action trial? So it's just unworkable in that respect. Is it workable for there to be subgroups of classification? For there to be, I'm sorry, Judge? Subgroups of classification. No, Your Honor. I don't see any subclassification that could work given the broad allegations of nondescript conditions that the plaintiffs have chosen to bring in this case. Now, the District Court was concerned, it appeared, with, well, could you ever have conditions claims certified in the 1983 context? And so we reject the City's contention, the District Court said, that differences and conditions preclude predominance here. But that's a mistake in our view, Your Honor. The issue is, on this record, with these allegations, do you have predominance? And the answer is no, absolutely not. As the Court knows, predominance is a far more demanding standard than commonality under Rule 23A2. And the plaintiffs failed to cite any case, anywhere in the country, that certified a damages class action, notwithstanding one under 1983, against a municipal government entity, with allegations so broad as this. Now, I want to talk about Monell, if I could. I think the way the District Court looked at it was that the variety of conditions didn't really matter that much, that there may be variety there, but there was this common question of deliberate indifference to the conditions generally, and that that was a common question and predominance was met. What's wrong with that approach? It flies in the face of the Supreme Court's decision in Wal-Mart versus Dukes. I mean, the Supreme Court has held that any competently drafted complaint will raise common questions, but that's not the issue. We have to have a complaint that will put forth a record that will generate common answers, and you don't have one in this case. So it's the same erroneous mistake that the Supreme Court reversed in Wal-Mart. Questions, common questions are not enough, and that kind of brings me right into the Monell piece of this assessment. This Court's held in Soblo versus City of Brooklyn Park and many other cases that rigorous standards of culpability and causation apply to Monell claims. So you don't just have an issue of different conditions for different plaintiffs individually assessed. You have different Monell claims and different theories of Monell liability depending on what conditions we're talking about, and the District Court made no effort to identify which of the at least four possible theories of Monell liability are at issue in this case. Is it an official policy claim based on a written policy of the City? Deliberate indifference to a custom or widespread practice? Is it a Propotnick-Pembauer final policymaker liability claim? Is it a failure to train deliberate indifference claim? The reality is that we could have and likely do have all four of those depending on which plaintiff you're representing. Huge problems with presenting, for example, a custom and practice claim given the wide scope of time and varied conditions that we're talking about. I think the Sixth Circuit's decision in Woodard is instructive on this point. Take a custom and practice claim. It sounds like to me that really you're arguing that it's impossible for conditions claimed against a municipality for its detention center or its jail to be brought on a class basis. Not at all, Judge. You don't make any argument to that effect. Our argument is that it's impossible to do it on this record with these broad allegations and the differences in complained of conditions between people. We'll concede that there are hypothetical circumstances where there could be a certifiable 1983 conditions claim, but this isn't one of them. I'll say, unless you have further questions on that point, Judge, with respect to Monell liability, for example, take the Sixth Circuit's decision in Woodard, notice is an element of a widespread deliberate indifference to a custom and practice type claim. It would depend on which condition we're talking about and notice would vary per class member depending on how long the particular condition had been in place and how long did the city know about it. Take for example, maybe an issue with the HVAC system or with the city's third party pest control contractor. How long had it been since there were issues with rodents for this particular plaintiff? Let's say a month. That plaintiff has a weaker claim than say the plaintiff has alleged that there were rodent issues for six months or two years longer and they continued. So there are differences in the strength of those respective Monell claims just amongst themselves. So the Monell analysis here further complicates and renders unworkable the certified class decision here. We also want to, before I get into rebuttal time, point out that the district court utterly failed to determine class certification at an early practical time as required under Rule 23 and then erred in allowing what the plaintiffs characterized as a renewal of their motion to certify, which itself was filed at the very last day upon which certification could be granted. And now the district court said, well, there's no prejudice to the city, but that's not true at all. There's extraordinary prejudice to the city. We still don't know who's in these cases. And we had no opportunity given the … What's the timeliness obligation the court had to make? So in early practical time, I believe the rule reads, and we cite in the brief, Your Honor, cases supporting that the district court has a duty to decide certification at an early practical time. And that's consistent with the purpose of Rule 23, which is to give fundamental fairness to the defendant, to give notice of here are the issues, here are the plaintiffs and the number of them, and the potential exposure to liability at an early enough time so that the defendant can do discovery on those issues and know who the plaintiffs are. And we still don't. And we're facing the prospect of summary judgment and a class action trial, not knowing who's in the class or what the issues are. So there's huge prejudice to the city. And I'll say, just before I step off here … Well, what do you say are the causes for the delay? Well, I know that … … an unreasonable one. So I know that the plaintiffs attempt to paint the delay as, you know, the city's alleged intransigence and discovery. And those assertions are without merit in our view. The approach that the plaintiffs took in this case was a scorched earth motion to compel at every objection yet that they were moving to compel. So the district court later found that city officials, upon a review of the record, had exercised their duties diligently in complying with discovery in this case. Now, the scope of discovery was massive, given the scope, the incredibly broad scope of the claims that they chose to bring. Excessive force claims, retaliation claims, inadequate medical care claims. Every possible 1983 type of claim that the court could consider was part of the scope of discovery in this case. And so it almost, you know, encompassed every document that ever came out of the facility over the period of almost 10 years. And so that prejudiced the city in and of itself, because we could never know what are the actual issues that are going to be certified. And we're spending extraordinary resources complying with discovery demands. But now the case is down to environmental issues? Well, conditions, Your Honor, whatever those are. And as I said, it's still not clear to me, based on the district court's order, what conditions are at issue in this case. Even the plaintiffs in their motion for class certification, the only effort to describe what conditions there are was limited to a footnote that said, here's what conditions aren't at issue, and everything else is fair game. So that's just, it's overbroad, it's unworkable. I'll reserve the rest of my time, unless the court has any questions at this point. Thank you, Mr. Whelan. Thank you. Mr. Reinbold. Thank you, Your Honor, and may it please the court. I'd like to just start briefly with the standing question you raised at the outset of my friend's argument. There's no dispute about standing. All members of the class were detained in the facility. Counsel, could you speak up just a little bit? All members of the class were detained in the facility and suffered the unconstitutional conditions therein. The district court said in their order on the injunctive class, dismissing that as moot, sorry, dismissing that for lack of standing to seek injunctive relief, that there was no dispute about standing for the damages classes. And my friend raised that argument in terms of the individuals who proceeded anonymously as an argument against adequacy. We addressed that on page 48 of our brief. Are there subclasses here? Because not everyone suffered the same environmental or were subject to or suffered harm from the same environmental conditions. You had some with heat, you had some with mold, some with pests. How are those classified? Or is it all just one big class? There are subclasses here, Your Honor. One subclass deals with the heat claims. The other one deals with the conditions of confinement. And my friend expressed some confusion about what conditions we were alleging. So I'd like to clear that up here, if I may. The violation that we have alleged is a violation of the right to reasonably adequate sanitation that manifested in three primary ways through the proliferation of mold, through the proliferation of pests, and through plumbing and leak issues that occurred throughout the class period. My friend referenced the allegations about law library feminine hygiene products. We would stipulate that those are not going to be part of our trial, not part of our proof there. I think the district court rightly recognized that the crux of our case is mold, plumbing, pests, and then heat as well for the heat subclasses. Well, let me ask this question. Is the claim, because I think you'd have to recognize, that some of the class representatives testified that they experienced no problems with plumbing, for example, right? Yes, Your Honor. Some said no problems with mold. Okay. So do we get to a claim where the real violation is being housed in a facility where there is a risk of exposure, or it's an exposure to conditions which can give rise to these specific individual deficiencies? The heart of our claim, Your Honor, is that MSI was uninhabitable. It was uninhabitable from beginning of the class period to the end of the class period, and that affected everybody. And now that manifested in certain ways. Certain people experienced mold and plumbing. Others saw mice. There were mice in the common areas, standing water in the common areas. Now that affected everybody. And I would point you to pages 12 and 13 of the district court's class certification order, where she says, we'll be able to rely on common evidence from inspection reports and detainee complaints that span the entirety of the facility, and also that the allegations here were for substantially similar poor conditions throughout the class period. Now your question asked what happens if someone saw mold but no mice, and what happened if someone had plumbing issues but not mold issues? Would it be enough to have seen mold, or will there be a necessity of demonstrating some harm from each of these classes of deficiencies? Well, the standard that we have to meet is that there is a serious exposure to substantial risk. And so, you know, seeing mold, of course, I wouldn't say that merely viewing mold would constitute a constitutional violation, necessarily. To continue on the thread I was discussing with Judge Shepard, the standard here is the totality of the circumstances. And this Court has held in cases like the Stearns case, these are all merits cases that we didn't really get into in the briefing, because this is something for down the line. But you don't slice and dice the conditions that people experience. The totality of the circumstances inquiry is such that in combination has there been a constitutional violation of the right to reasonably adequate sanitation. And here every member of the class, every named plaintiff alleges multiple of these specific sub-conditions that add up to a violation of their right to reasonably adequate sanitation. We presented that evidence to the District Court who said that everybody in this class is alleging essentially the same injury. And I think that's the issue that my friend has not been able to articulate a response to. And the facility has been closed. The facility has been closed. So, adjusted relief is not, that's not in play. That's right. That's right, Your Honor. This is a pure damages class action. The facility has been closed, which I think is frankly a remarkable fact. In 2021, the mayor toured the facility and she left and said, these people are being housed in sub-human conditions. I'm going to close the facility and that's what happened. Judge Smith, you asked about sub-classing. You know, to the extent that in later proceedings in this case, material differences pop up between class members in terms of the conditions. Say the city had a phenomenal 2015 and did a lot of work to remediate the conditions, but then fell off again in 2016. That's something that could be taken care of through either altering the damages award or through sub-classing. You know, we presented evidence that the District Court credited that throughout time, the violations were consistent here. So, to the extent that evidence comes up in the future, the District Court has the discretion to alter or amend the class definition to account for that. So, you seem to do what I suggested maybe the District Court did, is that is to lump these and then use sort of the, there's this common question of deliberate indifference by the city. The city argues that violates the Supreme Court's Walmart case. What's your response to that? So, the Walmart case involved the largest class that had ever been certified. It involved more than a million members, spanning over 3,400 stores. And the issue there that precluded commonality was the fact that there was no common policy at issue. Walmart had no policy of indifference toward women's rights in terms of promotion. That was established. And so, the question became, well, what's happening at each individual store? And so, that was an individual issue that was going to preclude any sort of class-wide treatment. Here, we have a single facility, and we noted in our brief that single facility cases often proceed on a class-wide basis. So, we don't have the multiple decision-maker problem that was really at the heart of Walmart. But you also, I don't think you're pursuing a policy argument that the city had an actual policy, right? The argument that we're pursuing is that the city had a practice of detaining inmates in unsanitary conditions. Okay. So, the city's argument in response, I think, is that you're really relying more on, like, custom and practice, that sort of thing, which requires notice. And then, it seems to me you get, there's not, I don't think a general category of notice of inhumane conditions that they have to fix. It would seem to me at that point, it then becomes an individualized, did we know about mold? Did we know about heat? And then, it gets a little fuzzy because you've got different plaintiffs alleging different things, with certainly some overlap, for sure. But how do you address that? So, actually, I don't think we have a notice issue here. My understanding is that the city's knowledge is almost uncontested because the evidence that we're drawing on are official documents. I'll just point you to two. Exhibit 34, to our initial class certification motion, official city letterhead talks about mice, roaches, even raccoons in some of the dorms. That's from September 2015. Exhibit 48, again, official city letterhead addressed to the mayor, talks about ongoing issues that haven't been fixed, rodent problems. That's just two exhibits of the 150. Now, I take your point to be, pick me up, I think, on what my friend referenced, the Shabla case, where in these sort of Monell cases, you have to show that there was a city policy or practice that caused the harm here. And I think causation is not really an issue in this case. I'd point you to 486F, third at 390, the Shabla case. When a municipal policy or practice is unconstitutional, we allege that the practice of detaining inmates in unsanitary cells was unconstitutional. When that policy or practice is unconstitutional, to establish a exercise. So I think that deals with our Monell case here. This is not an instance like you had in the Shabla case, where it was a one-off violation, where you might have some difficulty showing that the city actually had a policy that would reach that violation. Here we have to show that the city's policy extended throughout the class period, affected all the class members, and we presented evidence to the district court that the district court credited and didn't abuse her discretion in doing so of exactly that. And just to back up slightly, each class member here would have to make the exact same showing. So our contention is it's better to do it once in a class trial as opposed to 10,000 times. Each class member would have to show that the conditions that they faced, the totality of them, were unconstitutional. Now we're focusing largely on common areas here. The kitchens, the dormitory bathrooms were shared generally. And so the conditions that we're pointing to are common ones. And that's what the district court found as well. Essentially the claim is that the degree of squalor that was permeating the entire institution affected everybody housed there. We also have to show that the city knew about those conditions and was deliberately indifferent to them. Deliberate indifference we would show by the fact that it essentially failed to remediate them for years despite having years of notice. I would point you to the deposition testimony of Mr. Glass for the HEAT subclass, where in 2012 when he started as city corrections commissioner, he said, HEAT is a major problem. And yet we had no systematic mitigation of HEAT until 2017. That's the cutoff for the class period. We have similar evidence from 2012. We have weekly inspection reports, monthly inspection reports, all going to the city where detailing exactly the conditions that were happening throughout the facility. And then up until 2018, that's the cutoff for the class period. That's when the city increased its budget for maintenance at MSI by 75%. And so we said, okay, that's a material change that would be difficult for us to show class-wide harm after that point. Can I ask a question? If it's okay to lump these various conditions together as you like to do, why is there a HEAT subclass? Well, HEAT, it's a distinct constitutional violation in that the HEAT, again, only affects individuals on days where it's especially hot. And so the subclass is defined as only including members who were detained at MSI on days where it was 88 degrees or hotter. And that's the threshold that is where it poses a risk to an average person's health. So again, everybody would be feeling the HEAT in MSI. It was hotter inside the facility than it was outside the facility. So we know the average person on a day like that will have to show on the merits was facing a substantial risk of serious harm. So two claims. One is reasonably adequate sanitation, pest mold plumbing. Second is excessive heat. And that is the HEAT day subclass. Counsel, would you agree that we have cases where individuals have brought Section 1983 claims based on conditions of confinement? And we've made a distinction based on the duration of exposure where, for example, it could have a deplorable plumbing situation in an individual cell, but we've said if it's a relatively brief duration, then that's not a constitutional violation. How does your class definition account for that? And wouldn't that disqualify a great number of potential class members who were exposed to these different conditions for a limited period of time or maybe they were exposed for a brief period of time and then removed and then returned? How do you account for all of that? So we don't currently, there's no minimum date within the class currently. That's something that if the district court sees evidence that there was no risk of serious harm for a person detained only briefly, that's something that can be altered or amended in the class definition later. Purely ministerial, simple to do. Now I'll note that the class is about 90-10 pretrial detainees. The length of time that you can have as a pretrial detainee in these types of conditions to constitute a constitutional violation is, I think, generally lower than under the Eighth Amendment. And here we have an average length of detention of about 100 days, which I think is well beyond where many of these this court's cases are in terms of minimum length of detention. I think that's a pure merits issue that can be solved on a class-wide basis by limiting the class definition if necessary. It's something the district court pointed out, in fact, in her order that it would be a possibility to revisit later on. So one point I would like to emphasize here is that, and I think it gets to some of the questions you've been asking, Judge Grinder, that this case is distinct from personal injury litigation. This is not an amalgamation of cases where we're saying, I was injured in this way and trying to lump together personal injury. This case involves constitutional injury, and there are two distinctions that I'd like to draw out, and then a third as well. The first is that there's no causation problem that we face, unlike in a case like Amchem, where you have an asbestos causation problem. Here, the claim is that we are exposed to risk, and you are exposed to risk merely by being detained at the facility. That's the claim. The second is that there's no proof of actual damages required to establish liability on the city. That's from the Howard case. We cite it in a footnote just because it's on the merits, and it's about Bowen v. Black from this court. Any constitutional injury imports damages in the nature of it. That's what the Supreme Court said in the case. We don't need to show that, for instance, members of the class were physically injured to establish liability on their behalf. The third is, these are small dollar claims. This is a grouping of small dollar claims. Unlike in a case like Amchem, where you have cancer victims, where they might have tens of thousands, hundreds of thousands of dollars in liability that they can assess, we are pursuing only small per diem damages on behalf of each class member. That is relevant as well to the predominance inquiry. My friend referenced the renewed motion issue here. I'd prefer to rely mostly on our briefs, but he also referenced that we hadn't moved within an early practicable time. You would look to footnote one of the district court's initial class certification motion. She notices this. The fact points out that the schedule was largely driven at the agreement of both parties, and that the scheduling orders here were largely by consent. My friend has pointed out no case where an appellate court reversed or remanded or interfered with the district court's discretionary management of its docket. The same is true on the 23C1C renewed motion issue. No case where an appellate court has reversed a district court for being too lax in terms of any further questions. I'd be happy to address them. Otherwise, I'm happy to yield the balance of my time. I don't see any. Thank you. We'd ask that you affirm. Thank you, Mr. Weinbold. Mr. Wheaton, everybody. Thank you, Judge. Thank you, Your Honors. A few points in response. There's a question about risk, and the general allegation here is that class members were exposed to risk, but risk from what and what risk? It all is different depending on what condition that we're talking about. We point this out in our brief, of course, but any risk of exposure to issues with plumbing is different from any risk with exposure for the other issues that they've alleged in this case, including mold, is different. It would require different evidence to establish what risk, if any, there is with respect to these different conditions, which, again, different allegations of different conditions for each individualized plaintiff's allegations. I want to give as an example here with respect to the risk, and this touches on the injury issues as well. Plaintiff Cody, one of his allegations is that he had ringworm that was exacerbated by excessive moisture. We'd have to present evidence, and maybe had we known that this was going to be the issue, expert testimony on it, is that medically, is there causation there? We have an allegation from Plaintiff Borden that hard water exacerbated her eczema. We'd have to present different evidence to establish that that's not the case, and that's not supportable on this record. So there are allegations of physical injury. There are individualized issues with respect to causation, with respect to injury, and the risks, again, Your Honor, they're different depending on what condition that we're talking about and how long you were exposed to it, Judge Shepard, which, again, absolutely correct. This court has held that the time of exposure is a critical element of the inquiry when the court's conducting an inquiry under the totality of the circumstances test, and we have plaintiffs in this certified class action, based on the data available to us, that were in MSI for extremely short periods of time, maybe only in the holdover section of the facility for less than a day, and yet, then they never even made it to be assigned to a dorm or to a pod, which, again, are separate, in effect, facilities built at different times with different systems. So the timing issue alone eviscerates predominance and commonality on this record. Counsel, short of denying class certification, are there efforts that can be done at the district court level to refine the classification or subclassifications within the broad allegations that the plaintiffs have chosen to pursue in this case? There's really workable subclasses that the district court could attempt to refine at this stage, and even if it did, discovery is closed, and it would prejudice the city at this late stage to try and determine, all right, well, let's conduct discovery in any hypothetical subclass that could be certified at this stage. I want to address the heat allegations for a moment. We point this out in our brief, but counsel referenced the 88 degree threshold of risk that attaches, he says, to exposure at that temperature. That must be reliant, if anything, upon expert testimony that the district court never considered whether it's admissible or not at the time that it issued its class certification order. So that's an issue in and of itself, but notwithstanding that, if you take 88 degrees as this constitutional temperature threshold, which there's no support for that concept, then the claim of a young, healthy detainee who was given unlimited ice-cold showers and industrial fans and Gatorade freeze pops and all the other mitigation measures that is in the record that the city provided, although it's disputed based on which plaintiff, how much of measures. Say this young, healthy detainee is exposed to 88 degrees for 30 minutes, one day, but he gets all those mitigation measures. His claim could be decided under the district court's reasoning in one stroke with the claim of an elderly detainee with serious health problems that may allege that he's housed in a unit where temperatures exceed 100 degrees for weeks on end and he's given no mitigation measures at all. This is unworkable. It cannot be. Those two claims depend on the jury looking at the particular circumstances that each inmate was exposed to for how long, with what mitigation measures, which even the district court conceded, well I won't say conceded, but said in its order. Are there cases out there that say that the provision of popsicles, if that's present, that there is no claim, that that defeats a claim for excessive heat? Well, yes, Your Honor, because you can't be deliberately indifferent. What's the best case? I'd have to, I believe it's a Fifth Circuit case, I'd have to, I know it's in here, Judge, but it's escaping me at the moment. Maybe Yates. If it was a Fifth Circuit case, I'd have to file a 28J letter on that point. But I know we cited it in a brief. So yes, the answer is, if you provide mitigation measures, which the city did, although the plaintiffs say they did for some plaintiffs and not for others, then how can the city be deliberately indifferent? It's not if it's actively working, which it was, to provide heat mitigation efforts. So there can be no claim in the end. And under the certified class, you know, if we move for summary judgment on that front, we think it should be granted and it would preclude every heat claim for everybody, given the broadly certified class. So that is unworkable and unfair. If there are any other questions, I'm happy to answer them at this time. All right. I see none. Thank you, Mr. Whedon. Thank you, Your Honors. The Court wishes to express its appreciation to both counsel for the argument you've provided to the Court this morning. We will continue to study the record and the briefing you have submitted and rendered decision in due course. Thank you. Counsel may be excused.